3-6-0-5-8-3 People of the State of Illinois, Appalachia, by Thomas Arado, MacTaggart, MacTaggart, James Wozniak Mr. Wozniak, you may proceed Good afternoon, Justices. May it please the Court, Counsel? My name is James Wozniak. I am with the State Appellate Senators Office, and I represent the defendant in this matter, MacTaggart. Your Honor, shortly after January 8, 2014, when Mr. MacTaggart was arrested on the charges he was ultimately convicted of, he appeared before a judge in Whiteside County, and at that hearing, he filled out an essence and liabilities affidavit to determine whether or not the public defender should be appointed to represent him. After filling out that affidavit, the Whiteside County public defender, Mr. Heuermann, was appointed to represent Mr. MacTaggart. Mr. Heuermann represented Mr. MacTaggart for about two months, appeared at several hearings, filed several motions on his behalf. Shortly after that affidavit and appointment of the public defender, Mr. MacTaggart's mother posted a $25,000 bond to secure the release of Mr. MacTaggart from jail. Shortly after that, the State filed a motion to reconsider the appointment of the public defender. A hearing was held on the State's motion, and at that hearing, Mr. MacTaggart was not represented by counsel. While Mr. Heuermann still was the appointed counsel representing him, he felt it was not proper for him to make any arguments on behalf of Mr. MacTaggart based on the nature of the State's motion, and the judge agreed with that. So Mr. MacTaggart had to represent himself pro se at the motion of the State's motion to reconsider the appointment of the public defender. The court found that the posting of the bond made Mr. MacTaggart no longer indigent, said that a defendant's ability to borrow money from others should be a factor in voting out a person as indigent or not, discharged the public defender, and directed Mr. MacTaggart to hire private counsel, which he eventually did. Mr. John Steckle, he hired him and paid him apparently with a bond assignment for that $25,000 bond that Mr. MacTaggart and his mother, Jean, signed. The argument is that I have before you, and that Mr. MacTaggart has, is that the discharge of his public defender was an erroneous discharge. The public defender was the counsel of his choice, and that erroneous discharge violated his right to counsel of choice. His bond was how much? $250,000, Your Honor. $25,000 cash? Yes, Your Honor. Nobody gets to pick the public defender, though, so you're using the choice. No. Sort of a loose thing. I believe what you can interpret the case law to be is that no one gets to pick which specific lawyer is appointed for them. I believe that Mr. MacTaggart and similar situated defendants always have the right to choice in terms of he could have represented himself. He could have chosen to represent himself. Well, he's entitled to public defender, not a specific public defender. Am I correct? Correct. And he's entitled if he qualifies, right? If he qualifies. So our real issue before us today is whether he qualifies after a bond is posted to continuing services of a public defender. Correct. That would be one of the issues. Yes. I mean, that's really the issue here, isn't it? The case law, Valerie, the Wood case stand for that a bond being posted should not be, a bond posted by another should not be considered as part of the determination of whether or not a person is indigent or not. So is the trial judge incorrect in reading the law to say that you can consider assets that you have access to? And this was arguably an asset he had access to. Is that his take on it? The judge in the record just said that I would consider the amount that a person could borrow from another person, friends or family. Okay. So what's the state of law on that specific question? On whether or not? Just exactly as you phrased it. The law is that when it's in terms of a bond being posted, so that sum of money that was posted as a bond, that what the Valerie case says, you cannot consider it unless there was some sort of proof that a person, or there's an assumption, I think, that if there was unfettered control of that money and that the person wouldn't have to pay the money back. That it's their money, but they won't owe a debt to another. So I don't think there's any case law that stands for that a person becoming in debt to a friend or a family member or a bank is a consideration on whether or not they are no longer indigent. So to get to a simple summary, you're saying there's no law there that says the ability to borrow should be considered in determining indigency. I don't see the case law that would stand for the ability to borrow should be factored in by the court to say whether or not a person is indigent or not. Well, that's really kind of your issue here, isn't it? Now, we can talk in terms of the bond, am I correct, that the people who posted the bond, in this case his mother, correct? Correct. Okay. When they signed, or she signed for the bond or put up the cash, was informed that that money was not always going to come back to her, right? Because it never does. It could be used, they're on the bond sheet, it could be used for purposes by the court such as financing fees and costs. And yes, there is that disclaimer on most bond sheets and I believe on this one as well, if I recall. Right, right. I don't believe it makes a difference. Does that make a difference? I would say that, no, I don't believe it makes a difference because I think the case law is clear in Illinois that the whole valvary of what a very exact situation happens, someone else posts the bond on behalf of the defendant. And the defendant says, that's not my money. And the court used those bond monies posted by those other people to say, well, you're no longer indigent, you should be able to hire private counseling. The court said that that is error. You cannot consider the bond posted by another. And what, even if, in this case, I would say that he ultimately did get access to the bond because his mother had to sign off on it. She also signed the bond assignment to Mr. Feckle. But that should not have been a determining factor by the court to find Mr. McKaggert was no longer indigent. Because Mr. McKaggert was... Now, if this were, you know, his posting, then clearly you would say he's not indigent, right? If he was able to post $25,000 cash. I think the court would take that into consideration. I wouldn't say that posting $25,000 made Mr. McKaggert no longer indigent. On his assets and liabilities, she would say he had no income. He had $1,000 in monthly expenses. He had net assets of slightly over $2,000. So even though he had $25,000 to post would not necessarily make someone... He's got monthly bills to still pay, especially if he's out of custody. But I do believe the court would take that into... factor that in to determine whether or not he is indigent or not. But if the court took that into consideration and said you no longer qualify for public defender, would that probably be appealable? Would you be here? You could appeal whether or not it was abuse of discretion by the court to deny him the public defender. What the state argues, and the state will get up here and argue, and I believe in their briefs essentially conceded that Valvery would stand for that the bond posted by another should not have been considered by the court to determine that Mr. McKaggert was no longer indigent. What the state, and in the heart of my argument, what the state argues is that even if it was error, that was an issue, there is no error anymore because Mr. McKaggert went on and hired a private counsel. And I think what is important is the Gonzales-Lopez case, the U.S. v. Gonzales-Lopez case. It's an important case, it's important. In that case, Mr. Gonzales-Lopez had a private attorney hired by his family. He subsequently hired a second private attorney. That private attorney was not allowed to practice because he was not able to practice in that particular federal jurisdiction. Ultimately, Gonzales-Lopez hired a third attorney, was convicted, and the Supreme Court said that he was not allowing his first hired counsel to not enter an appearance pro pac. Gee, hungry U.S. hands. My Latin is not that great. Was erroneous, and the government conceded that. It was erroneous to not allow that attorney to practice before the federal court, so he was denied his right to counsel of choice. So here you have Mr. McKaggert, he's appointed the public defender. Had the public defender been erroneously discharged, which I argue happened here, and he represented himself pro se, then the holdings of Valderby would have caused him to have err because he was denied his right to counsel, appointed counsel if he had a right to. If he had hired Mr. Kuhlman, as I said, as a private counsel person, he was never appointed counsel, and that Mr. Kuhlman was discharged erroneously. He subsequently hired Mr. Stafford. And Ralph Lopez replied that it was an erroneous discharge and it's structural error. You don't need to show any prejudice. So why should Mr. McKaggert be in any different position just because he's poor and couldn't afford an attorney to begin with? What the state must argue is that if there is an error, it's cured because he hires private counsel. But his counsel choice was the counsel he was entitled to, which is an appointed counsel, not one that he had to pay for. I think it's important. We have here an erroneous discharge of an attorney for financial reasons. And I would say that would be an erroneous discharge. And Gonzales, who was an erroneous discharge, was a federal judge that misread a local rule about two attorneys practicing that there are a possibility and a witness in the ring, I believe. As I say, some of the hypotheticals in my view are quite extreme, but you could see a myriad of reasons where a judge, when he particularly doesn't like a public defender, or there's a critical animosity, or for some reason, it's clear in the record a judge erroneously discharges that public defender or that appointed counsel from representing the defendant and then forces the defendant into a choice.  But if I get convicted, at least I've got Valverde and Wood behind me saying it's air, or at least try to salvage what I can to protect my rights and hire private counsel, which Mr. McTaggart found a way to do. But it was still air to erroneously discharge the public defender. So you're saying that the air can't be cured by subsequent retention of an attorney? No. Through third-party funds, arguably. Through third-party funds, which is what you have here, right? Correct. Because Gonzales-Lopez stands for, though different because it's a private attorney throughout, Gonzales-Lopez stands for, it doesn't matter if that subsequent attorney does a spectacular job. Here Mr. Stackle was reprimanded by the court, he was held in contempt, he was often late in the peer report, there were a lot of issues with Mr. Stackle's representation with Mr. McTaggart at trial, but it doesn't matter if Mr. Stackle was arguably the most fantastic attorney that ever walked through a room. What Gonzales-Lopez stands for is there is no prejudice. The air is structural air, the denial of counsel of choice. Once that erroneous discharge occurs of no counsel of choice, that is the air, and it can only be cured by reversal of conviction and remand for further proceedings. And that's what we would argue here. The air is clear that Mr. McTaggart was denied his right to his opponent counsel, his counsel of choice, the counsel that he said that he desired, that he needed. That denial was erroneous. It led to a denial of his constitutional right. That denial was a structural air, structural plain air in this matter. Is it really, and you keep saying counsel of choice, and I think Justice Carter asked that question as to choice. Is it really just counsel? I mean, he was denied, you're arguing it was air to deny him a finding of indigency. Is that really what you're saying? This case would be, yes, the denial of indigency, a finding of indigency, and had he, my argument would be slightly different had he represented himself personally. Because Valbury and Wood and the other cases say, that's it, you should have been indigent. You should have still had a point of counsel. You were left defenseless. You had no counsel. Because Mr. McTaggart eventually did hire counsel and had to fight for counsel, what the state argues, and I think what can be interpreted out of some of the language in U.S. v. Gonzales-Lopez and U.S. v. Lee is that you don't have the right to an appointed counsel of choice. So what I believe that stands for is that I get the public defender and I say, no, no, I want the best private criminal attorney to represent me. We don't have that choice. But my counsel of choice is to globally appoint a counsel. So if I'm indigent and I get appointed counsel because I do have a choice, I can take that appointed counsel or I can represent myself. Now when you've wrongfully taken away my right to that appointed counsel, you've left me now with two choices of represent myself per se or figure out a way to go hire private counsel. But hiring that private counsel should not remedy the error that occurred Should never be put into that choice position is what you're saying. Yes. Now the state cites the Smalley case. This is the one with the boy that was ill. And then the son shows up. Yes. That's the case. As analogous to this situation. And there they said it was an acquiescence because the defendant went along with the continued representation by the son. Correct. Well, he went along because I remember the fact. So this guy, they're saying this guy was defended, went along and. I believe it was after the fact, after the trial, was that when he made the complaint. Where here, Mr. McTigre defended it from the beginning. When he's having to represent himself at this hearing, he says, I need the public's time. That's not my money. I don't have the funds to hire private counsel. He's objecting right there. Once the court makes his decision. I think it's Smalley. I think the defendant didn't object. They wanted the father. He wanted the father. I would have to look at it again. I don't remember. They wanted the father, but the son showed up. Because I remember the father could not actually. Well, he laid down in one proceeding in the courtroom. I think that's the case. And so then it's the next day for court, rather than the father show up, the son showed up. But what is Mr. McTigre supposed to do? Once the court discharges a plaintiff counsel, he can't. The court's not going to give him a plaintiff counsel. You're not eligible for plaintiff counsel. So now he has a choice. Well, I can go hire a private attorney and try to still protect my rights or represent myself. I have faith he could argue that he's acquiescing to the court. But I don't think that's a proper way to look at it. He's forced into that decision. Are there any other questions, Justice Lewis? Thank you, Your Honor. We'd ask for, again, the case to be found to be structural and that to reverse Mr. McTigre's conviction. And we'll bring this down for the proceedings. We made two arguments pretty clearly. The first was that there was a balancing trial court based on information that we had at the time that people filed a motion to reconsider the appointment of a public defendant. The information was that they had a $25,000 bond posted by the mother and that he had assets that could be used in order to hire an attorney. If the defendant did say, well, that's not my money, I have somebody here that can testify to that You know, when a bond's posted by the defendant or the defendant's mother or some other party, the bond money, unless the bond is released or discharged, given back to the party, how many times have you heard of bond money being used to pay for an attorney before, you know, a conviction or something? You know, bond money can be used for fine fees. I mean, just as Justice Holdridge said, the people who post the bond are informed right then and there in Illinois the consequences of posting this bond are that you might not ever see it again. Right? Okay. So how many times is that bond money used to be accessible for a defendant to hire some attorney? An assignment of bond money to an attorney is, I've seen it multiple times, that they file this with the courts and essentially turn it as counsel, say, like a lien. They can get a bond assignment, that's true. Yes, and they file that. They did that in this case, though, that the defendant, excuse me, July 31st, 2014, a bond assignment was filed, which assigned $15,000 to Stecco. So the defendant was, you know, I mean, they have the ability to do that. Now he was on release because of the posting of the bond in the first instance, right? Right. Okay. And who signed the assignment? Both himself and his mother. And his mother. Had there been any assignment that his mother hadn't signed? That is an interesting question because normally it goes back, if the defendant were acquitted, the money would go back to us. It goes back to the person who posted the bond. He never had to sign that. Correct. He had no interest in that bond. Well, he had an interest in the sense that he would be able to pay his fines. I would argue he had no legal interest in that bond. A bond, if anything, a bond was posted by a third party, and for that bond to be assigned, I would suggest that the third party has to make the assignment and probably is the only required party. And she did sign it. Yes, she did. Now, my question is, did the state move to ask for more postings? No, they did not. Because they had the $25,000 less the 15 there was assigned. So what's the priority? I mean, after the proceedings have finalized, regardless of the outcome of the proceedings. Well, it's an interesting point. In this case, after the trial judge imposed the fines, the defense counsel went back and said, hey, can you move to vacate the fines on the basis that that money was coming to him? And the trial judge, in fact, did grant that motion, the $10,000. It's a little interesting. I would suggest that the priority out of the $25,000 posted is going to the attorney first. At least that's the way the court saw it, correct? So that bond was, quote, impaired while he was out on release. When there's an assignment, right? It was impaired in the sense that any money being released would go back to him, but if he violated the terms of his bond, I think the full $25,000 would be owed to the state. Does the assignment trump any fines and fees that were assessed? I don't believe so. So if the trial judge said, I'm not vacating anything, this is going to fine some fees. No, he actually did vacate. Oh, I know, I know. In this case, he did. Hypothetically, if he said, no, I'm not going to do that, all the fines and fees paid. In theory, he could do that, yes. So the attorney who had the assignment would be out of luck. Because there wasn't anything to assign once the fines and fees, hypothetically, if fines and fees covered that. Yes. I mean, to the extent that the money might have been available or not available, regardless, in this case, it was assigned to Mr. Deffold. You know, I don't want to forget to ask this question, so I apologize for being out of order. You know, as far as the line of issues that we're dealing with. But in the Smalley case, okay, you raised that as the, that there was acquiescence in Smalley. Now, in Smalley, if I remember the facts correctly, a father is representing a defendant. The father evidently is ill or something, because at one point he lies prone in the courtroom. Goes down on the floor in the courtroom. So the guy wants, he still wants that guy to represent him. So then in a subsequent hearing, rather than the father showing up, I assume the older man, the son shows up and says, look, I'm going to represent the guy. I looked at the file. I'm up to stuff in the case, right? I mean, that's not the relation of the case, but, you know, I'm ready. So the guy wanted the other guy, but they went ahead and proceeded with the son. So to the argument that he was deprived his counsel, that he wanted, this was a privately hired attorney, by the way. The court said there was an, they didn't use waiver or forfeiture. They said acquiescence, if I remember the case correctly. That was the language. So they didn't, I don't know exactly how that, what that means legally, but we have a concept of waiver and forfeiture. Which one was it? Well, I think it perhaps was closer to the forfeiture, because you can complain at the trial. Well, it's all an issue of private counsel. If you don't like your private counsel and they send a replacement and you don't want the replacement, you can hire a different private counsel, correct? I mean, so if you keep going forward, even though it's the guy from the firm you don't like, I mean, you've accepted it. You've tacitly accepted it. But is it the same thing when you say I'm indigent, the money isn't mine, the money came from my mom and dad, it came against their house, and I don't have any money, and the judge says, I think you do have money. I don't care that you say you don't. You're going to get, you know, you're going to have to hire private counsel. I'm going to make your mom sign this bond assignment. Is that then getting, choosing not to go pro se, is that acquiescing? It's acquiescing in the sense that you could have proceeded by going pro se and preserving your complaint that you weren't. Well, you did a motion to reconsider, and that was heard by the court. I mean, at some point, then you say, no, I persist in the public defender, and I'm going to be the public defender, not just pro se. I mean, because you're saying, well, he can persist by appearing, by, you know, representing himself. Well, that isn't the public defender, that is, you know, representing yourself. So he could, I mean, how is it any different than that he chose, well, I guess we'll take some of this bond money, this assignment, and get this attorney. But isn't there a chilling effect when you're thinking, you know, this is my parents' money, and I'm not going to, don't hire an expert. That's more money. Don't do this, don't do that, trying to manage the amount of money that's spent. Isn't there a chilling effect that's possible there? It's possible, but in this case, he assigned $15,000, his mother assigned $15,000 to actually hire an attorney. He had talked his mom into doing it, I suppose. Or his mom, as a mother, decided to do it for the son. It was up on the record, one way or the other, by evidence. Could you say their backs were against the wall? They were left with a choice whether to have an attorney or not. Or pro se. Pro se, correct. So this is a little bit different than small wave, isn't it? It is not directly on point, obviously. There's no cases directly on point, as close as Adam's words fall there. I mean, I can see that if the defendant had a pro se representation, those cases clearly are on point. The question here is whether there was a change in circumstance in the sense that, well, think of that background. If this court finds that the finding of indecency or non-indecency by the trial court was improper, then Adam's words then, although they apply, because he did not have the opportunity to have public defendants. So you would concede that, then? You concede that? Yes. If that were, if he did not hire, subsequently hire counsel. What we're saying is, as counsel pointed out, essentially that there's a curing of the error or at least a forfeiture of the error by hiring counsel and having that counsel represented throughout the proceedings and not asking for the public defendants to be appointed. Well, what's the phrase for that, a Hobson's choice or something like that? No choice is good. And this, again, is not the private counsel kind of situation. This is the public defendants. And this is not a charge you'd want to go typically pro se with him, if any charge you'd want to go pro se. Well. Don't we go back to the original issue? Is there error or is there not error in the trial court finding the defendant indigent when there's $25,000 cash posted, regardless by whom it's posted? Is that, you're not conceding that it was error, are you? No, no, we are not. We're saying that when the trial judge was presented with the information at that motion to reconsider hearing, he had $25,000. The only representation of that, that it wasn't his, that it wasn't available to him to use or to hire an attorney of his own on sworn testimony, but he had a witness that he said he could present, but he never presented. The judge on a couple of points said, well, they were a pre-match person to testify, and then the defendant said no. I don't know what the status is, but I'm not going to prism up. You know, on that point, an interesting thing is that, you know, when we're talking about this bond being posted, their cases were initially a defendant hires an attorney, they'll post a bond, and then subsequent to that, after it's been going on for a while, they end up getting the public defender appointed for them. Have you seen cases like that? Yes, there are, because... And those are cases where somebody's been posting a bond, so there was a bond out there, like $25,000, but because of subsequent events, even with that bond in place, they've been appointed the public defender, right? Yes, though apparently the state did not object in those particular cases. How do you think that happened, appoint a public defender later on, because they didn't object? If the state would have pointed out the assets of the bond, perhaps the judge would have made a specific decision, but I don't know of a specific case that I can remember. Well, in this case, you're saying, well, if what was known to the judge at the time that he reversed his indigency decision when made aware by the state that there was $25,000 cash on deposit as bond in the circuit court's office, are you saying that had he been told that the bond was posted by his mother, that he would have made a different decision? Is that what you're saying? The question is, is that, is it available? It's only available under a theory of borrowing, is that correct? Because it's obviously not his cash, and could he personally assign that bond himself to an attorney walking down the hallway and say, represent me, I'll give you an assignment of the cash bond? I don't think so. Okay. Okay. So the question is, is whether it's, can you properly take into consideration borrowing potential in determining indigency? I was looking at the cases that we cited to determine if any of them addressed that, and it didn't. None of them did. The case is simply to talk about a complete financial picture as possible, balancing assets and liabilities, and so is potential borrowing part of the complete financial picture? Well, that's in effect what we really have here, isn't it? I mean, it's either got to be shown to be an irrevocable gift, become an asset of the defendant, or it has to be shown that the defendant can get that money. And he can't do it himself by an assignment of bond posted by someone else. That notice goes to the person posting the bond, saying these are the risks you take in this money, but if it's taken, it's taken by order of the court, not by the defendant. No, that's not right. So is it error to consider that a bond posted by a third party as an asset to determine indigency? Isn't it? I'm still struggling with I think that's the issue, isn't it? It is. The first question is whether it was error to consider that. Right. Nobody really knows what the legal proper term of art without a lot of study and analysis. Okay. So that error was cured, right? Could you focus on why it was cured or I mean, again, I mean, why it was not in your instance? So whatever language the state uses, orphaned, acquiesced, cured, that's the really unjust thing about this, is that the state used their motion to reconsider public defender as a source. Why the state's attorney's office has an interest in the financial, they don't represent, they represent the county. That's why you've answered your question. But they're not the treasurer, they're not the ones that expend funds to the public defender. Yeah, the state's attorney is the attorney for the county. Correct. So there would have been some sort of... At the behest of another official or collective. So the treasurer had asked them to do that. But it's unknown as to why they thought it was their position. They have a civic duty to save money for the county. They're probably taxpayers in the county. Once they file this then, it then forces Mr. McTaggart to represent himself at that hearing. So he doesn't have counsel even representing him. He subsequently, he objects there, saying I need the public defender to settle my money. So there's an objection. There was nothing in the post-trial motion about this issue, but who's supposed to put that in the post-trial motion? Mr. Stoeckl, who's been hired, saying it was error for the court to put it in the position that I got money to be hired privately. I guess so. Yes, arguably to preserve the issue, it would be. I mean, frankly, I think this is structural. We can argue here, because yes, the issue was not, there was not an objection. There was a contemporaneous objection, but this was not raised in the post-trial motion. But it just keeps putting Mr. McTaggart in a bad position. He has to represent himself at a hearing. He has to make the Hobson's choice of, okay, well, I'll keep representing myself. No, I can't preserve the error, or I'll cure the error by hiring a private attorney, which just seems the wrong and unjust way to do it, because if someone is wealthy enough to hire a private attorney, and that attorney is erroneously discharged, Count Ross Lopez stands for, well, if you've got the money, still hire a second private attorney, or represent yourself, per se. Or maybe in that position say, I've exhausted all my funds. I need a point of counsel now. Count Ross Lopez would apply, saying, because your hired private counsel is erroneously discharged, that is error. Why should Mr. McTaggart, because he is too poor to hire an attorney to be in any different of a position? The attorney that he was constitutionally entitled to, the point of counsel, was discharged wrongfully and made him have to make a choice that spent someone else's money, because there's nothing that the state says, well, Mr. McTaggart failed to present any evidence. He used his own unsworn statement. When did the wrongful discharge occur in this proceeding? Well, we have a filed motion to reconsider. He has a point of counsel, filed motion to reconsider, which is brought up for hearing before this judge. Okay. And when did the judge rule on the motion? At the end of the hearing? At the end of the hearing. Okay. So he had an attorney in that hearing. Why do you keep saying he didn't? Because the attorney did not participate in the hearing. The attorney explicitly sedates on the record that he felt he should not make any arguments because it was involving his representation of the defendant, and the trial judge agreed in saying, I don't think your attorney should make any arguments on that. Why not just claim that as an error? That he wasn't represented by counsel in that position? No, that his counsel was allowed not to represent him, regardless of what the counsel said. That was a ruling by the court in a proceeding where he was represented by counsel. Yes. He was not discharged. I mean, why not claim that as an error? I'm just curious. It's not really a specific argument, maybe, but I feel that— You're adopted now. Huh? You're adopted now. It gets us to the result we're asking for. That's the last one. Thank you. Close conviction. The issue is, and I think the reason the argument I made, is that the case law is very clear that the court should have never discharged his point of counsel. The bond should have never been factored in. The case law is clear. There is nothing that the state presented that shows that Mr. McTaggart had—this was his money. He says, yes, it's not my money. The only thing the state has, they don't present any evidence either. All there is is the bond sheet that's signed by just Gene McTaggart, Mr. McTaggart's mother. So the state didn't present any evidence that Mr. McTaggart's financial situation changed from the assets and liabilities that they had filled out, and at that hearing the court said, I understand why you were found indigent at that first hearing, but now because of this bond. I mean, the court is explicitly saying, the only reason I'm saying you're no longer indigent is because of this bond. No other changes whatsoever. So again, Your Honor, we would ask that you reverse Mr. McTaggart's conviction and remain in this manner until the court proceeds. Is there any other questions from the court? I don't think so. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible.